## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **FEDERAL INSURANCE COMPANY,** | * | |
| **Plaintiff,** | * | |
| | | **Civil Action No. RDB-22-00073** |
| **v.** | * | |
| **EEMAX, INC.,** | * | |
| **Defendant.** | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM ORDER

Plaintiff Federal Insurance Company ("FIC" or "Plaintiff"), as a subrogee of PWA Real Estate LLC, doing business as JMS Capital Group - Real Estate, brings this product liability and negligence action against Defendant Eemax, Inc. ("Eemax" or "Defendant") for damages sustained from a defective water heater.  (ECF No. 1.)  Presently pending before this Court is Defendant's Motion to Disqualify Plaintiff's Expert Witness. (ECF No. 23.)  This Court has reviewed Defendant's Motion and Plaintiff's opposition (ECF Nos. 23, 24) and finds that no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, Defendant's Motion is DENIED.

### BACKGROUND

Plaintiff FIC insured PWA Real Estate LLC, doing business as JMS Capital Group - Real Estate ("PWA") for PWA's property (the "Building") that it owned and/or operated in Baltimore City, Maryland.  (ECF No. 1 at 2.)  The Building contained "a tankless Eemax-brand electric water heater…located in a tenth-floor tenant space."  *Id.*  The water heater was manufactured in 2014 and "had a heat exchanger housed in PVC plastic."  *Id.* at 3.  On June

7, 2020, "the PVC exchanger tube leaked at a seam" and the water heater leaked. *Id.* As a result, the water leak damaged floors seven through ten in the Building, and accumulated $481,967.37 worth of damage. *Id.* As PWA's insurance company, Plaintiff paid insurance benefits to accommodate PWA for its loss. (ECF No. 1 at 3.) On January 11, 2022, Plaintiff FIC brought this product liability and negligence action as subrogee of PWA against Eemax seeking to recover damages sustained as a result of the water heater leak. (ECF No. 1.)

About a month after the Complaint was filed, Defendant filed a Motion to Strike (ECF No. 23) to disqualify Plaintiff's expert. Defendant explains that Plaintiff's expert, Dr. Priddy, "was engaged as an expert by Eemax to consult on several projects" and had even consulted and provided Eemax with "expert advice regarding the same product and part involved with the failure allegation at issue in the current litigation." (ECF No. 23-1 at 1.) Defendant argues that because Eemax has previously retained Dr. Priddy in a similar context, Plaintiff should be precluded from retaining Dr. Priddy here. *Id.* In support, Defendant states that Dr. Priddy's "blatant side-switching" and additional factors require this Court to disqualify Dr. Priddy as an expert on the case. *Id.* at 3-4. Plaintiff opposes Dr. Priddy's disqualification and aptly notes that Eemax's arguments are unsubstantiated and the alleged "side-switching" law is inapplicable here. (ECF No. 24-1 at 3-4.) Plaintiff further contends that even additional factors do not support disqualification. *Id.* at 5. For the reasons explained below, Defendant's Motion to Strike (ECF No. 23) is DENIED.

## STANDARD OF REVIEW

"The Court has the inherent power to disqualify experts." *W.R. Grace & Co. v. Gracecare, Inc.*, 152 F.R.D. 61, 64 (D. Md. 1993). The Court's "power derives from the necessity to protect

privileges which may be breached when an expert switches sides, and from the necessity to preserve public confidence in the fairness and integrity of judicial proceedings." *Id.* Notwithstanding this necessity, this Court has recognized that courts "are generally reluctant to disqualify expert witnesses." *Palmer v. Ozbek*, 144 F.R.D. 66, 67 (D. Md. 1992). As Judge Chasanow of this Court has noted, "[w]hile non-attorney testifying experts do not have absolute freedom of action, any potential conflict of interest must be assessed in terms of whether the concurrent relationship relates to the same subject matter and whether an exchange of confidential information is involved." *U.S. Home Corp. v. Settlers Crossing, LLC*, No. CIV.A. DKC 08-1863, 2013 WL 5530282, at *8 (D. Md. Oct. 3, 2013).

In situations where there is a potential conflict of interest, the Court "must determine 'whether the attorney or client acted reasonably in assuming that a confidential or fiduciary relationship of some sort existed [with the expert], and, if so, whether the relationship developed into a matter sufficiently substantial to make disqualification or some other judicial remedy appropriate.'" *Palmer*, 144 F.R.D. at 67 (citing *Paul v. Rawlings Sporting Goods Company*, 123 F.R.D. 271, 278 (S.D. Ohio 1988)). "The focus of the second part of that inquiry is whether any confidential or privileged information was actually disclosed to the expert." *Noel v. Artson*, No. CV WMN-06-2069, 2007 WL 9662432, at *1 (D. Md. Mar. 2, 2007). The party seeking disqualification bears the burden of proof. *Id.*

## ANALYSIS

This Court will not disqualify Plaintiff's expert, Dr. Priddy. Contrary to Defendant's contention, this is not a scenario where Dr. Priddy has "switched sides" nor is this a situation in which his previous relationship with Defendant involved confidential or privileged

information disclosure.  Defendant vaguely states that it previously retained Dr. Priddy to opine on "the same alleged product and the same allegedly defective or failed component part" in "the context of an anticipated claim." (ECF No. 23-1 at 4.)  However, as Plaintiff aptly notes, this "is not a situation where Dr. Priddy switched sides in the same case" and Defendant's contentions "are conclusory and based solely on *ipse dixit*."[1]  (ECF No. 24-1 at 4.)  Defendant's Motion contends that Dr. Priddy previously consulted Eemax about its product, but there is no indication that he was retained to work on this case specifically.  Therefore, this is not a "blatant side switching" scenario, and disqualification is not warranted on this basis.

Instead, this Court's inquiry is properly focused on determining whether Dr. Priddy's previous work with Eemax constitutes a conflict of interest.  As relevant to the first part of this Court's analysis, Defendant asserts that "Dr. Priddy was engaged for a prior anticipated claim to analyze the same issues that he will analyze in this case" and that it was reasonable to expect that he "would provide information and expert advice in confidence" as well as be exposed to Eemax's confidential information pertaining to its own products. (ECF No. 23-1 at 4-5.)  Plaintiff avers that Defendant's "statements related to confidential information are conclusory and unsupported."  (ECF No. 24-1 at 6.)  Because Defendant retained Dr. Priddy for two cases in the past, it was reasonable for Defendant to conclude that it maintained a confidential relationship with Dr. Priddy as to *those* two cases, and perhaps to cases involved in the same subject matter.  However, Defendant has provided few details for this Court to

---

[1] Black's Law Dictionary defines *ipse dixit* as "something asserted but not proved." IPSE DIXIT, Black's Law Dictionary (11th ed. 2019).

4

properly consider whether the subject matter is essentially the same as past retentions, and therefore Defendant has failed to bear its burden. *See Noel*, 2007 WL 9662432, at *1 ("The party seeking disqualification bears the burden of proving both elements, and disqualification is 'likely inappropriate' if either inquiry yields a negative response.").[2] Even if Defendant substantiated its claim that the instant litigation was similar to those in which Dr. Priddy was retained in the past, Defendant's argument nonetheless fails as this Court continues to the second part of the inquiry.

Defendant has failed to establish that "confidential or privileged information was actually disclosed to the expert" as it relates to issues in this case, and Defendant has therefore further failed to carry its burden. *Noel*, 2007 WL 9662432, at *1. Eemax states that Dr. Priddy worked directly with its engineer and had access to information that "was not publicly available and would not otherwise have been provided unless there was an expectation that the materials and information would be maintained as confidential." (ECF No. 23-1 at 7.) Defendant specifically highlights Plaintiff's request for a "STEP 3D CAD file" to stand for the proposition that Plaintiff has become privy to proprietary information as a result of retaining Dr. Priddy as its expert. *Id.* at 8.

Defendant's contention is conjecture, as Plaintiff has appropriately noted that there is no evidence that "Plaintiff made this request solely because Dr. Priddy knew to ask for these drawings due to his prior relationship" with Eemax. (ECF No. 24-1 at 7.) Plaintiff argues that

---

[2] "Once the Court concludes that the party moving for disqualification has failed to meet its burden of establishing a confidential relationship, it need not address the second prong of the test." *Noel*, 2007 WL 9662432, at *2.

such request is Dr. Priddy's standard practice when investigating product failure and is independent of his previous relationship with Eemax. *Id.* This Court finds Defendant's broad allegations unpersuasive. Dr. Priddy was not retained in anticipation of this specific litigation and Defendant has failed to show that any information relayed to Dr. Priddy in previous representations is relevant to the specific product at issue in this particular case. In the sole example provided by Defendant, it failed to provide evidence or allusions that the STED 3D CAD file is not otherwise discoverable information. *See Palmer*, 144 F.R.D. at 68 (discoverable information does not "constitute potentially prejudicial confidential information"). Without more, this Court cannot conclude that Eemax has disclosed confidential information to Dr. Priddy about the specific product at issue in this case such that disqualification would be warranted. *See Noel*, 2007 WL 9662432, at *2 ("Without some indication from [Defendant] as to what confidential information was passed to [expert], the Court cannot conclude that [Defendant] ha[s] met the burden of establishing this second prong."). Accordingly, there is no conflict of interest that precludes Dr. Priddy from being retained by the Plaintiff in this case.

## CONCLUSION

For the reasons stated above, IT IS this 22nd day of September 2022, hereby ORDERED that Defendant's Motion to Disqualify (ECF No. 23) is DENIED.

Dated: September 22, 2022                              _____/s/_____

                                                      Richard D. Bennett
                                                      United States District Judge